## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EDGEN GROUP, INC.**, as Plan Administrator of the **EDGEN GROUP, INC., GROUP HEALTH PLAN**, Plaintiff, | § § § § § | **CIVIL ACTION NO:** 3:19-CV-491 |
| v. | § § | **JUDGE** |
| **EMILY POPE** and **VANMEVEREN LAW GROUP, P.C.**, Defendants. | § § § § | **MAGISTRATE JUDGE** |

## COMPLAINT

Plaintiff, Edgen Group, Inc., as Plan Administrator of the Edgen Group, Inc. Group Health Plan, as and for its Complaint against Defendants, Emily Pope and VanMeveren Law Group, P.C., alleges as follows:

## BACKGROUND

1. This is an action under section 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(3) for equitable relief to both remedy violations of and enforce the Edgen Group, Inc. Group Health Plan (from time to time referred to as the "Plan"), a *self-funded* employee welfare benefit plan within the meaning of ERISA §3(a), 29 U.S.C. § 1002(1). (See Exhibit 1, Affidavit of Beryl Stokes)

2. The Plan has paid benefits on behalf of Emily Pope for injuries she sustained from a May 17, 2018 automobile accident. The Plan seeks equitable relief in the form of a constructive trust and/or equitable lien by agreement upon amounts held by Ms. Pope and VanMeveren Law Group, P.C. that belong in good conscience to the Plan.

3. This is an action, in part, for equitable relief and the imposition of a constructive trust and/or equitable lien over identifiable funds in the possession or constructive possession of the Defendants.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The Court has exclusive subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1).

5. Venue in this Court is proper pursuant to 29 U.S.C. § 1132(e)(2), because the Plaintiff does substantial business within this district and the Plan is administered within this district.

## THE PARTIES

6. Plaintiff, Edgen Group, Inc. ("Edgen"), is the Plan Administrator and a fiduciary of the Edgen Group, Inc. Group Health Plan, which is administered at 18444 Highland Road, Baton Rouge, Louisiana 70809.

7. Edgen is a "fiduciary" as defined in 29 U.S.C. §1002(21)(A), and brings this action under 29 U.S.C. §1132(a)(3), (i) to enjoin acts or practices which violate the provisions and the terms of the Plan, and (ii) to obtain other appropriate equitable relief to redress such violations.

8. Plaintiff is authorized to bring this action on behalf of all Plan participants and beneficiaries to enforce the terms of the Plan and to protect the assets of the Plan under 29 U.S.C. § 1132(a)(3) and federal common law.

9. Upon information and belief, Emily Pope was, at all relevant times, a person domiciled in Texas, with an address at 13355 N. Highway 183, Apt. 1315, Austin, TX 78750, and a covered participant in the Plan.

10.  Upon information and belief, VanMeveren Law Group, Inc. ("VanMeveren") was, at all relevant times, a law firm and Colorado professional corporation with its principal place of business at 2038 Caribou Dr., #101, Fort Collins, Colorado 80525. VanMeveren represents Ms. Pope in an action for personal injuries related to the accident. VanMeveren is a necessary party because it is the trustee of the Emily Pope settlement funds, and is in actual and/or constructive control of the funds, and is named as a Defendant to ensure that full relief may be granted.

## FACTUAL ALLEGATIONS

11.  At all relevant times, Emily Pope was a participant and covered person under the Plan.

12.  On or about May 17, 2018, Ms. Pope sustained injuries as a result of an automobile accident in Colorado.

13.  Ms. Pope brought an action against the parties responsible for her injuries and other damages resulting from the accident, including medical expenses paid by the Plan.

14.  The Plan has paid medical expenses in the amount of $96,207.86 to or on behalf of Ms. Pope for her injuries and seeks to recover this amount from the Defendants to the extent they have recovered money from the party(ies) responsible for Ms. Pope's injuries.

15.  The Plan contains the following provisions governing subrogation and reimbursement:

**Subrogation, Reimbursement, and Third Party Recovery Provision**

**Payment Condition**
(1) The Plan, in its sole discretion, may elect to conditionally advance payment of benefits in those situations where an Injury, Illness, disease or disability is caused in whole or in part by, or results from the acts or omissions of Plan Participants, and/or their dependents, beneficiaries, estate, heirs, guardian, personal representative, or assigns (collectively referred to hereinafter in this section as "Plan Participant(s)") or a third

3

party, where any party besides the Plan may be responsible for expenses arising from an incident, and/or other funds are available, including but not limited to no-fault, uninsured motorist, underinsured motorist, medical payment provisions, third party assets, third party insurance, and/or guarantor(s) of a third party (collectively "Coverage").

(2) Plan Participant(s), his or her attorney, and/or legal guardian of a minor or incapacitated individual agrees that acceptance of the Plan's conditional payment of medical benefits is constructive notice of these provisions in their entirety and agrees to maintain one hundred percent (100%) of the Plan's conditional payment of benefits or the full extent of payment from any one or combination of first and third party sources in trust, without disruption except for reimbursement to the Plan or the Plan's assignee. By accepting benefits the Plan Participant(s) agrees the Plan shall have an equitable lien on any funds received by the Plan Participant(s) and/or their attorney from any source and said funds shall be held in trust until such time as the obligations under this provision are fully satisfied. The Plan Participant(s) agrees to include the Plan's name as a copayee on any and all settlement drafts.

(3) In the event a Plan Participant(s) settles, recovers, or is reimbursed by any Coverage, the Plan Participant(s) agrees to reimburse the Plan for all benefits paid or that will be paid by the Plan on behalf of the Plan Participant(s). If the Plan Participant(s) fails to reimburse the Plan out of any judgment or settlement received, the Plan Participant(s) will be responsible for any and all expenses (fees and costs) associated with the Plan's attempt to recover such money.

(4) If there is more than one party responsible for charges paid by the Plan, or may be responsible for charges paid by the Plan, the Plan will not be required to select a particular party from whom reimbursement is due. Furthermore, unallocated settlement funds meant to compensate multiple injured parties of which the Plan Participant(s) is/are only one or a few, that unallocated settlement fund is considered designated as an "identifiable" fund from which the plan may seek reimbursement.

**Subrogation**
(1) As a condition to participating in and receiving benefits under this Plan, the Plan Participant(s) agrees to assign to the Plan the right to subrogate and pursue any and all claims, causes of action or rights that may arise against any person, corporation and/or entity and to any Coverage to which the Participant(s) is entitled, regardless of how classified or characterized, at the Plan's discretion.

(2) If a Plan Participant(s) receives or becomes entitled to receive benefits, an automatic equitable lien attaches in favor of the Plan to any claim, which any Plan Participant(s) may have against any Coverage and/or party causing the sickness or injury to the extent of such conditional payment by the Plan plus reasonable costs of collection.

(3) The Plan may, at its discretion, in its own name or in the name of the Plan Participant(s) commence a proceeding or pursue a claim against any party or Coverage for the recovery of all damages to the full extent of the value of any such benefits or conditional payments advanced by the Plan.

(4) If the Plan Participant(s) fails to file a claim or pursue damages against:

   (a) The responsible party, its insurer, or any other source on behalf of that party;

   (b) Any first party insurance through medical payment coverage, personal injury protection, no-fault coverage, uninsured or underinsured motorist coverage;

   (c) Any policy of insurance from any insurance company or guarantor of a third party;

   (d) Workers' compensation or other liability insurance company; or

   (e) Any other source, including but not limited to crime victim restitution funds, any medical, disability or other benefit payments, and school insurance coverage.

the Plan Participant(s) authorizes the Plan to pursue, sue, compromise and/or settle any such claims in the Plan Participant(s)' and/or the Plan's name and agrees to fully cooperate with the Plan in the prosecution of any such claims. The Plan Participant(s) assigns all rights to the Plan or its assignee to pursue a claim and the recovery of all expenses from any and all sources listed above.

**Right of Reimbursement**

(1) The Plan shall be entitled to recover 100% of the benefits paid, without deduction for attorneys' fees and costs or application of the common fund doctrine, make whole doctrine, or any other similar legal theory, without regard to whether the Plan Participant(s) is fully compensated by his/her recovery from all sources. The Plan shall have an equitable lien which supersedes all common law or statutory rules, doctrines, and laws of any State prohibiting assignment of rights which interferes with or compromises in any way the Plan's equitable lien and right to reimbursement. The obligation to reimburse the Plan in full exists regardless of how the judgment or settlement is classified and whether or not the judgment or settlement specifically designates the recovery or a portion of it as including medical, disability, or other expenses. If the Plan Participant(s)' recovery is less than the benefits paid, then the Plan is entitled to be paid all of the recovery achieved.

(2) No court costs, experts' fees, attorneys' fees, filing fees, or other costs or expenses of litigation may be deducted from the Plan's recovery without the prior, express written consent of the Plan.

(3) The Plan's right of subrogation and reimbursement will not be reduced or affected as a result of any fault or claim on the part of the Plan Participant(s), whether under the doctrines of causation, comparative fault or contributory negligence, or other similar doctrine in law. Accordingly, any lien reduction statutes, which attempt to apply such laws and reduce a subrogating Plan's recovery will not be applicable to the Plan and will not reduce the Plan's reimbursement rights.

(4) These rights of subrogation and reimbursement shall apply without regard to whether any separate written acknowledgment of these rights is required by the Plan and signed by the Plan Participant(s).

(5) This provision shall not limit any other remedies of the Plan provided by law. These rights of subrogation and reimbursement shall apply without regard to the location of the event that led to or caused the applicable sickness, injury, disease or disability

(Exhibit 2, Plan Doc, pp. 75-79).

18. On or before August 22, 2018, Ms. Pope retained Attorney Matthew Fermelia of VanMeveren to pursue claims against the parties responsible for her accident and injuries.

19. On each of September 17, 2018, the Plan's representative sent a letter to Attorney Matthew Fermelia notifying him of the Plan's ERISA subrogation and reimbursement rights. (A copy of the letter is attached as Exhibit 3.)

20. On April 24, 2019, Attorney Karl Hager sent a letter to the representative of the Plan, stating that Plaintiff "rejected any purported lien" the Plan is attempting to assert and denying the Plan's right of recovery. (A copy of that letter is attached as Exhibit 4).

21. Upon information and belief, the Defendants have now recovered at least $275,000 from the party(ies) responsible for Ms. Pope's injuries. Though the Defendants have recovered funds, they have refused to honor the Plan's first-priority reimbursement claim.

22. Further, despite numerous communications from the Plan and its representatives, the Defendants have ignored all requests to reimburse the Plan.

23. Pursuant to Rule 1.15A of the Colorado Rules of Professional Conduct, because VanMeveren was aware of Plaintiff's ERISA lien in this matter, upon its receipt of the settlement funds in which the Plan claimed an interest from the third party tortfeasor, VanMeveren was required to promptly notify the Plan, promptly deliver the funds to the Plan, and render a full accounting to the Plan.

24. Pursuant to Rule 1.15A of the Colorado Rules of Professional Conduct, when VanMeveren came into possession of property in which the Plan claimed an interest, the property was to be kept separate by VanMeveren until there was an accounting and severance of the respective interests. Since VanMeveren was aware that a dispute had arisen concerning the respective interests, the portion in dispute was to be kept separate until the dispute was resolved.

25. That VanMereven remains in possession of at least $91,657.50 in settlement funds to which it is not entitled.

26. That Pope remains in possession or constructive possession of approximately $182,372.07 in settlement funds.

### COUNT I
### CLAIMS FOR RELIEF UNDER 29 U.S.C. § 1132(a)(3)
### (AGAINST ALL DEFENDANTS)

27. Plaintiff repeats paragraphs 1 through 26.

28. The terms of the Plan are binding upon Ms. Pope, as a plan participant and covered person, and on any attorneys retained by her. (Exhibit 2, Plan Doc, pp. 75-76, Payment Conditions ¶ 2.)

29. According to the Plan, where other coverage is available to participants, the Plan only pays benefits conditionally upon the participant's agreement that she and her attorneys will reimburse the Plan for payments it has made in the event of a recovery from a third

party.

30. The Plan has a right to reimbursement of medical expenses it paid on behalf of Ms. Pope from any and all settlement(s) received from parties responsible for his injuries up to $96,207.86.

31. Upon information and belief, the Defendants are in possession and/or constructive possession of funds to which they are not entitled, and that belong in good conscience to the Plan.

32. Liability under ERISA § 502(a)(3) has been extended to a party who holds disputed funds on behalf of a plan participant. *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 244–46, 120 S. Ct. 2180, 2187, 147 L.Ed.2d 187 (2000); *ACS Recovery Svcs., Inc. v. Griffin,* 723 F.3d 518, 529 (5th Cir. 2013).

33. Although the Plaintiff has requested that the Defendants reimburse the Plan, the Defendants have refused to turn over the portion of the recovered funds as required by the terms of the Plan. Defendants' refusal violates the terms of the Plan and ERISA. Plaintiff is entitled to equitable restitution in the form of a constructive trust or equitable lien by agreement with respect to the disputed funds controlled by the Defendants.

34. As a result of Defendants' violation of the terms of the Plan, Plaintiff has been injured. The Plan and Plan Administrator, in its capacity as fiduciary of the Plan, therefore seek all appropriate equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including but not limited to a constructive trust and equitable lien upon specifically identifiable and traceable funds in order to enforce the terms of the Plan.

**COUNT II**
**DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**
**(AGAINST ALL DEFENDANTS)**

35. Plaintiff repeats paragraphs 1 through 32.

36. The terms of the Plan are binding upon Ms. Pope as a plan participant and covered person, and on any attorneys retained by her. (Exhibit 2, Plan Doc, pp. 75-76, Payment Conditions ¶ 2.)

37. The Defendants promised not to do anything to prejudice the Plan's rights of subrogation or reimbursement. (Exhibit 2, Plan Doc, p. 79, Obligations ¶ (1)(d).)

38. The Defendants breached this obligation by denying the Plan's right of subrogation and reimbursement.

39. The Plan has an enforceable right to reimbursement for medical expenses it paid on behalf of Ms. Pope out of any and all settlement fund(s) the Defendants have received or will receive for Ms. Pope's injuries. (Exhibit 2, Plan Doc, pp. 77-78, Right of Reimbursement.)

40. The Defendants promised to promptly reimburse the Plan when a recovery through a settlement is made. (Exhibit 2, Plan Doc, p. 79, Obligations ¶ 1(e).)

41. Pursuant to the terms of the Plan, if Defendants fail to reimburse the Plan for all benefits paid out of any settlement received, the Covered Person will be responsible for any and all expenses (whether fees or costs) associated with the Plan's attempt to recover from the Defendants. (Exhibit 2, Plan Doc, p. 79, Obligations ¶ (2).)

42. The Plan has attempted to enforce its right to reimbursement by asserting a lien on any recovery received by the Defendants.

43. The Defendants' continued refusal to honor the terms of the Plan, and continued actions that prejudice the Plan's right of reimbursement, are violations of the Plan's

9

terms and a breach of the Defendants' obligations to the Plan.

44. The Plaintiff seeks a declaratory judgment from the Court declaring that (i) the subrogation and reimbursement provisions of the Plan apply to the funds recovered by Ms. Pope; and (ii) under the "make-whole" and "common fund" doctrines of ERISA, the Plan is entitled to first priority reimbursement of the benefits it paid on behalf of Ms. Pope from the proceeds of any and all settlement(s) with the responsible third party(ies) that the Defendants have received for Ms. Pope's injuries.

## COUNT III
## ATTORNEYS' FEES AND COSTS

45. Plaintiff repeats paragraphs 1 through 44.

46. Plaintiff seeks its actual attorneys' fees and costs, pursuant to 29 U.S.C. §1132(g).

47. Plaintiff is also entitled to its actual attorneys' fees and costs pursuant to the terms of the Subrogation provision within the Plan.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Edgen Group, Inc., as Plan Administrator of the Edgen Group, Inc. Group Health Plan, requests the following:

A. The imposition of an *in rem* constructive trust and/or equitable lien by agreement in favor of the Plan in the amount of $96,207.86 from the proceeds of any and all settlement(s), plus accrued interest, in the possession of the Defendants and/or their attorneys, agents or representatives;

B. A declaration of the Plan's ownership of the above-referenced settlement funds in the amount of $96,207.86 representing the amount of payments made by the Plan on behalf of Emily Pope;

C. An order enjoining the Defendants from transferring or disposing of any settlement funds which would prejudice, frustrate, or impair Plaintiff's ability to recover same;

D. An order directing the Defendants to turn over the proceeds of the settlement up to $96,207.86 to the Plan, plus accrued interest;

E. Other and further equitable relief to which the Plaintiff may be entitled, including but not limited to specific performance, which may be necessary for the Defendants to comply with their obligations under the terms of the Plan;

F. Awarding Plaintiff, Edgen Group, Inc., as Plan Administrator of the Edgen Group, Inc. Group Health Plan, pre- and post-judgment interest, costs and attorneys' fees; and

G. Such other and further relief as this Court may deem just and proper.

July 25, 2019

**Respectfully submitted,**

**MATTHIESEN, WICKERT & LEHRER, S.C.**

   /s/ *James T. Busenlener*
JAMES T. BUSENLENER (LA Bar #22284)
101 W Robert E Lee Blvd, Suite 401
New Orleans, LA 70124
P: (262) 673-7850
F: (262) 673-3766
Email: JBusenlener@mwl-law.com

Ryan L. Woody (Wisconsin Bar No. 1047279)*
MATTHIESEN, WICKERT & LEHRER, S.C.
1111 E. Sumner Street
P.O. Box 270670
Hartford, WI 53027-0670
Email: RWoody@mwl-law.com
*Pro Hac Vice to be filed.

*Attorneys for Plaintiff,*
*Edgen Group, Inc., as Plan Administrator of the*
*Edgen Group, Inc. Group Health Plan*